IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
2003 OCT 30  P 5:03
US DISTRICT COURT
BRIDGEPORT CT

LIGHT SOURCES, INC.

    Plaintiff/Counter-Defendant

v.                               Civil Action No.
                                    3:02-CV-190(SRU)

FIRST LIGHT TECHNOLOGIES, INC.,

    Defendant/Counter-Plaintiff         October 28, 2003


**PLAINTIFF'S, LIGHT SOURCES, INC.,
MEMORANDUM IN SUPPORT OF ITS
MOTION TO ENFORCE SETTLEMENT AGREEMENT
AND TO STAY DISCOVERY**


```
Fattibene and Fattibene
Arthur T. Fattibene, CT 06916
Paul A. Fattibene
2480 Post Road
Southport, CT 06890
Counsel for Plaintiff
```

**Table of Contents**

|   |   | Page No. |
|---|---|---|
| I. | NATURE OF THE PROCEEDINGS | 1 |
| II. | STATEMENT OF FACTS | 3 |
|  | A. PARTIES | 3 |
|  | B. THE INSTANT LAWSUIT | 4 |
|  | C. A CHRONOLOGY OF EVENTS LEADING UP TO THE SETTLEMENT AGREEMENT REACHED | 5 |
|  | D. THE SOLYMAR PATENT | 16 |
|  | E. FIRST LIGHT'S MOTIVE FOR RAISING THE NEW ADR ISSUE AFTER SETTLEMENT WAS REACHED | 17 |
|  | F. FIRST LIGHT'S BELATED INSISTENCE ON AN ADR PROVISION IS NOT BEING MADE IN GOOD FAITH | 18 |
| ARGUMENT |  | 19 |
|  | A. RELEVANT APPLICABLE LAW | 19 |
|  | B. THE PARTIES SETTLEMENT CORRESPONDENCE DID RESULT IN AN ENFORCEABLE SETTLEMENT AGREEMENT | 21 |
|  | C. FIRST LIGHT'S BELATED ADR ISSUE IS A BOGUS ISSUE | 29 |
|  | D. REQUEST FOR STAY OF DISCOVERY PENDING RESOLUTION OF ATTACHED MOTION TO ENFORCE THE SETTLEMENT AGREEMENT | 30 |
| CONCLUSION |  | 31 |

## TABLE OF AUTHORITIES

Page No.

### Table of Cases

*Anderson v. Bessemer City*
   470 US 564, 573-74 (1985)                                      20

*Bostick Foundry v. Lindberg*
   797 F.2d 280, 282-83 (6 Cir 1986)                              20

*Brock v. Scheuner Corp.*
   841 F.2d 151, 154 (6 Cir 1998)                                 20

*Core-Vent Corp. v. Implant Innovations, Inc.*                    20, 23
        ; 34 USPQ 2d 1581, 1584                                   24, 25
   (Fed Cir 1995)                                                 28

*Enterprise Rent-A-Car Co. v.*
*Rent-A-Wreck of America*
        ; 51 USPQ 2d 1213, 1214
   (8 Cir 1999)                                                   19, 20, 23

*David Massif Assoc. v. United States*
   557 F.2d 249, 257 (Ct. Cl 1977)                                25

*Notare Corp. v. Aquatic Renovation Systems, Inc.*
        ; 46 USPQ 2d 1097, 1082 (SD Ind. 1997)                    21

*S and T Mfg. Co. v. County of Hillsborough*
        ; 2 USPQ 2d 1280, 1281 (Fed Cir 1997)                     20, 21

*United States v. McCarthy*
   97 F.3d 1562, 1579 (8th Cir)                                 20

*Vaughn v. Sexton*
   975 F.2d 498, 506 (8 Cir 1992)                                 19

### Rules

Federal Rules of Civil Procedure
    Rule 1                                                        31

I. **NATURE OF THE PROCEEDINGS**

In the joint Revised Report of the Parties Planning Meeting filed December 13, 2002, the parties certified that they "would be willing to explore settlement at a settlement conference." On or about January 23, 2003, the Court issued a Referral To Magistrate Judge Garfinkel to conduct a settlement conference. On January 31, 2003, Magistrate Judge Garfinkel issued a Settlement Conference Order scheduling a settlement conference for April 3, 2003. Due to a series of circumstances relating to the parties being in direct negotiation with one another, the Settlement Conference scheduled for April 3, 2003 was adjourned to July 1, 2003.

After the parties failed in their direct negotiation, Magistrate Judge Garfinkel conducted a Settlement Conference on July 1, 2003. Present at this Settlement Conference of July 1, 2003 were Christian Sauska, President of Light Sources, Inc. (Light Sources), Kenneth Ell, President of First Light Technologies, Inc. (First Light), and their respective counsel of record. No agreement was reached as First Light's offer of $200,000 was unacceptable to Light Sources because the offer was tied to a paid up license under another of Light Sources' patents not in suit. Light Sources counteroffer of $250,000, for a paid

1

up license under the patent in suit, was unacceptable to First Light. While no agreement was reached at the Settlement Conference, the dialogue with respect to settlement between the parties continued. After a series of correspondence and telephone calls, First Light, on September 5, 2003, presented an offer in writing which was accepted by Light Sources in writing on September 12, 2003.

On September 26, 2003, First Light submitted a written draft agreement (the September 26th draft), allegedly to memorialize the Settlement Agreement reached by the parties. The September 26th draft agreement submitted by First Light contained an Alternative Dispute Resolution (ADR) clause which was never discussed throughout any of the meetings and discussions had between the parties and/or their respective counsels; and thus constituted an entirely new issue never agreed to after the settlement had been reached.

On September 29, 2003, Light Sources submitted to First Light a draft of a settlement agreement (the September 29 draft) limited to the agreement reached and in which the ADR clause was eliminated.

On October 2, 2003, First Light submitted another draft agreement (the October 2nd draft) that incorporated essentially all the provisions expressed in the September

2

26, 2003 draft plus an additional new issue, viz. extending the term of the Settlement Agreement from October 13, 2005, the life of the patent in suit, to December 9, 2011, which is the life of a patent not in suit, that has absolutely no relevance to the instant lawsuit and/or the settlement thereof.

As a Settlement Agreement was reached prior to the new issues First Light is now seeking to introduce into the Settlement Agreement after the fact, this Motion to Enforce the Settlement Agreement reached is necessitated.

## II.   STATEMENT OF FACTS

### A.   PARTIES

1. Plaintiff, Light Sources, is a Connecticut corporation that manufactures various types of fluorescent and ultraviolet lamps, and is the owner by assignment of U.S. Patent 4,700,101 granted October 13, 1987, for an Elongated Lamp Construction.

2. Defendant, First Light, is a Vermont corporation that also manufactures fluorescent and ultraviolet lamps.

3. Christian Sauska, President and founder of Light Sources, and Kenneth Ell, President and founder of First Light, are well known to each other.

3

4. They originally met in 1976 when both were employed by Voltarc, Inc. in Fairfield, Connecticut.

5. Upon the founding of Light Sources in 1983, Kenneth Ell left Voltarc, Inc. and joined Light Sources as Vice President of Manufacturing. Ken Ell remained employed at Light Sources from 1983 to January 1990, when he then left to form First Light.

**B.   THE INSTANT LAWSUIT**

1. The Complaint of the instant lawsuit is directed to a single count alleging that First Light is willfully infringing the claims of Light Sources U.S. Letters Patent 4,700,101 (the '101 patent) directed to a germicidal lamp. Attached hereto as Exhibit 1 is a copy of Fig. 8 of the patent in suit, illustrating the patented lamp construction as covered by the claims of the patent in suit.

2. Attached hereto as Exhibit 2 is a draftsman's illustration of First Light's accused germicidal lamp construction to illustrate that First Light's accused lamp is virtually a carbon copy of Light Sources' patented lamp, and which First Light asserts in response to an interrogatory that it has been manufacturing and selling the accused lamp since December 8, 1994.

**C. A CHRONOLOGY OF EVENTS LEADING UP TO THE SETTLEMENT AGREEMENT REACHED.**

1. On or about December 13, 2002, the parties filed a Revised Report of Parties Planning Meeting in which the parties jointly certified they "would be willing to explore settlement at a settlement conference."

2. On January 21, 2003, the Court (Judge Underhill) conducted a telephone status conference with the parties' attorneys of record, advising that the Court would approve the Revised Report, and that the Court would refer the matter of a Settlement Conference to a Magistrate Judge.

3. During the telephone status conference, First Light requested a written demand or offer from Light Sources that would be based on Light Sources' best estimates of First Light's sales of the accused lamps, prior to agreeing to a settlement conference.

4. Light Sources advised the Court during the conference that Light Sources would provide a demand with several options within the week. The Court also suggested that First Light make a counter offer if Light Sources' offer was not found to be acceptable.

5. On January 22, 2003, pursuant to the Court's suggestion, Light Sources did submit an offer in writing to First Light. The offer made by Light Sources was for a one

5

time, lump sum payment of $600,000.00 or a reasonable royalty of 5% of First Light's gross sales of the accused lamps running from January 1, 1996 to the expiration date of the patent in suit, viz. February 7, 2005,

or

$400,000.00 payment for past infringement with a promise to immediately cease any further manufacture and/or sale of the accused lamps. See Exhibit 3 (letter of January 22, 2003).

6. In a letter dated February 5, 2003, First Light rejected Light Sources' offer of January 22, 2003, and made a counter offer of $10,000.00 (Attached Exhibit 4).

7. On February 12, 2003, in a responding letter, Light Sources rejected First Light's counter offer of $10,000.00 as deminimis and not realistic. Notwithstanding Light Sources made a modified offer by reducing the initial offer of $600,000.00 for a paid up license to $500,000.00 and reducing the payment for past infringement only from $400,000.00 to $350,000.00. See Exhibit 5.

8. In a letter dated March 13, 2003, First Light's counsel rejected Light Sources' modified offer of February 12, 2003, and countered with an offer of $25,000.00 for Light Sources withdrawing the lawsuit and granting First

Light a paid up license under the patent in suit. See attached Exhibit 6.

9. Light Sources did not accept First Light's offer of March 13, 2003, which was renewed on March 31, 2003. See Exhibit 7.

10. Between March 31, 2003 and the Settlement Conference set for July 1, 2003, Christian Sauska, President of Light Sources, and Kenneth Ell, President of First Light, were in direct negotiations with one another wherein Light Sources was seeking to acquire First Light by purchase, which would have resolved the dispute.

11. As the acquisition negotiations did not work out, Magistrate Judge Garfinkel conducted a Settlement Conference on July 1, 2003. At the Settlement Conference, First Light indicated that an offer of $150,000 was made by Ken Ell directly to Christian Sauska. However, no confirmation of any such offer has been made.

12. At the Settlement Conference, First Light increased its alleged prior offer of $150,000 to $200,000, payable over four (4) years) for a fully paid up license under both the '101 patent in suit and Light Sources' Soylmar U.S. Patent 5,166,527 not in suit. Light Sources counter-offer at the Settlement Conference was a lump sum payment of $250,000 for a fully paid up non-exclusive

7

license under only the '101 patent in suit. As a result, no agreement was reached, and the Settlement Conference of July 1, 2003 ended on the note that the parties would continue their efforts to settle.

13. On July 25, 2003, Light Sources modified the last offer it made at the Settlement Conference of July 1, 2003, by agreeing to First Light's offer of $200,000 payable over four (4) years for a fully paid up license under the '101 patent in suit and a general release of all past claims. See Exhibit 8.

14. In a letter dated August 2, 2003 (Exhibit 8), First Light rejected Light Sources offer of July 25, 2003, which limited First Light's offer of $200,000 to only a paid up license under the patent in suit and a general release. Light Sources again rejected First Light's offer of $200,000 for a fully paid up license under both the '101 patent in suit and the Soylmar patent not in suit. See Exhibit 9.

15. In a letter dated August 18, 2003 (Exhibit 9), Light Sources advised First Light that Light Sources cannot negotiate away any future infringement of Light Sources' patents, nor does Light Sources agree to First Light's repeated claims of harassment.

16. In a letter dated September 5, 2003, First Light, in response to Light Sources' letter dated August 18, 2003, stated:

> "In short, FLT (First Light) is willing to pay $200,000 over four years to settle all past and present claims surrounding the patent in suit (the '101 patent), as well as receiving a paid up license, for the remaining term of **both** the '101 patent in suit and the Solymar patent, not in suit. <u>If LSI (Light Sources) is not willing to grant to FLT a fully paid up license for the remaining enforceable term of the Solymar patent, then FLT will honor the previous orally agreed upon amount of $150,000.00 to settle this lawsuit.</u>" (Emphasis added). Exhibit_____, September 5, 2003.

17. In a letter dated September 12, 2003, Light Sources agreed to accept First Light's offer of $150,000 in exchange for a fully paid up, non-exclusive license under the '101 patent in suit. See Exhibit 11.

18. On September 15, 2003, Light Sources' counsel, in a telephone call with Mr. Dusyn, orally confirmed Light Sources' acceptance of First Light's offer of $150,000 for a fully paid up license under the '101 patent in suit.

19. On September 26, 2003, First Light submitted to Light Sources a draft of a Settlement Agreement (the September 26th draft), allegedly to memorialize the settlement reached. See First Light's letter of September 26, 2003, Exhibit 12 and attached September 26th draft agreement, Exhibit 12A.

9

20. First Light's September 26th draft agreement (Exhibit 12A) incorporates in paragraph 6 thereof an ADR clause which had never been discussed in any of the settlement discussions or letters relating to settlement prior to September 12, 2003 when Light Sources accepted First Light's offer of September 5, 2003.

21. First Light's September 26th draft also seeks to raise a new issue of seeking to stretch out the payment of the agreed amount of $150,000 over five (5) years in equal quarterly payments. This issue was never discussed by the parties before the settlement reached by Light Sources accepting First Light's offer of $150,000 for a paid up license under the patent in suit.

22. On September 29, 2003, Light Sources submitted to First Light a draft agreement (the September 29th draft) to memorialize the settlement reached. See Exhibits 13 and 13A.

23. In Light Sources' September 29th draft (Exhibit 13A), the ADR clause that was first raised in the First Light September 26th draft (Exhibit 12A) was omitted, as it was not ever considered or even discussed by the parties in the offer made on September 5, 2003 (Exhibit 10) and accepted on September 12, 2003 (Exhibit 11).

10

24. In the September 29th draft, First Light was given the option of making the payment of $150,000 upon the execution of the Settlement Agreement or paying one-half upon execution of the Settlement Agreement and the other half on the first anniversary date of the execution of the agreement.

25. The parties do not dispute that the settlement sum of $150,000 constitutes the agreed payment to Light Sources for granting to First Light a fully paid up non-exclusive license under the '101 patent in suit for the life of said '101 patent.

26. Except for the new issues, i.e. the ADR provision and the five year payment plan which First Light is seeking to introduce into the Settlement Agreement after the settlement was reached, First Light's September 26th draft (Exhibit 12A) does not differ from Light Sources' September 29th draft (Exhibit 13A).

(a) Paragraph 1 of Light Sources September 29th draft is the same as Paragraph 1 of First Light's September 26th draft.

(b) Paragraph 2 of Light Sources' September 29th draft is not disputed.

(c) Paragraph 3 of Light Sources' September 29th draft embodies the optional payment plan that was discussed in

11

Light Sources' acceptance of September 12, 2003. (Exhibit 13).

    (d)  Paragraph 4 of Light Sources' September 29th draft corresponds to Paragraph 2 of First Light's September 26th draft.

    (e)  Paragraph 5 of Light Sources September 29th draft corresponds to Paragraph 3 of First Light's September 26th draft.

    (f)  Paragraph 6 of Light Sources September 29th draft corresponds to Paragraph 4 of First Light's September 26th draft.

    (g)  Paragraph 7 of Light Sources September 29th draft corresponds to Paragraph 5 of First Light's September 26th draft.

    (h) Paragraph 8 of Light Sources September 29th draft corresponds to Paragraph 7 of First Light's September 26th draft.

    (i) Paragraph 9 of Light Sources September 29th draft corresponds to Paragraph 8 of First Light's September 26th draft.

    (j)  Paragraph 10 of Light Sources September 29th draft corresponds to Paragraph 9 of First Light's September 26th draft.

(k) Paragraph 11 of Light Sources September 29th draft corresponds to Paragraph 10 of First Light's September 26th draft.

27. On October 2, 2003, First Light submitted to Light Sources a revised version of First Light's September 26th draft agreement in which First Light is seeking to introduce yet another new issue after the fact, viz. extending the term of the settlement agreement from the life of the '101 patent in suit, which is February 7, 2005, to December 9, 2011, the life of the Solymar patent, which is totally unrelated to the '101 patent in suit. See Exhibits 14 and 14A.

28. On or about September 25, 2003, Magistrate Judge Garfinkel issued a notice to the parties to meet in chambers on October 8, 2003, to place the Settlement Agreement on the record. Present at this conference were Light Sources Vice President David Myers, Light Sources counsels of record Arthur T. Fattibene and Paul A. Fattibene, and Mr. Kenneth Dusyn representing First Light. Unfortunately, Magistrate Judge Garfinkel was not able to be present at the conference, as he was on the bench conducting a trial.

29. Accordingly, the Settlement Agreement was not placed on the Record Calendar as First Light was still

13

pressing its newly raised issues relating to the ADR clause, the unreasonable five year extended payment plan, and the unreasonable extension term of the Settlement Agreement from February 7, 2005, the life of the patent in suit to December 9, 2011, the expiration date of the Solymar patent not in suit.

30. On October 9, 2003, the Magistrate Judge issued a notice for the parties to again confer and to make a telephonic status report to the Court by October 20, 2003.

31. In a letter dated October 13, 2003, Light Sources reported to Magistrate Judge Garfinkel the events that transpired at the October 8, 2003 meeting in chambers in his absence. See attached Exhibit 15.

32. On October 15, 2003, First Light submitted an ex parte letter to Magistrate Judge Garfinkel, setting forth three completely new alternate proposals in which First Light requested that the Court relate the same to Light Sources. Light Sources was not copied on this letter.

33. On October 18, 2003, Light Sources' counsel contacted Mr. Dusyn, First Light's counsel, by telephone to ascertain First Light's position as to the settlement reached. Mr. Dusyn reported that he had written a letter to Magistrate Judge Garfinkel which Mr. Dusyn advised contained three new alternative options which Mr. Dusyn

14

requested the Magistrate Judge to convey to Mr. Fattibene, Light Sources' counsel. Mr. Dusyn refused to discuss the new proposals with Mr. Fattibene.

34. On October 20, 2003, pursuant to the Magistrate Judge's instructions, Light Sources' counsel, Mr. Fattibene, reported to Magistrate Judge's chambers the status of the settlement, and advised chambers that Mr. Dusyn had also suggested that Mr. Fattibene contact chambers with respect to the three new proposals First Light submitted to Magistrate Judge Garfinkel.

35. On October 22, 2003, First Light submitted a letter (Exhibit 16) to Magistrate Judge Garfinkel in an apparent response to Light Sources' letter of October 13, 2003, to the Court.

36. On or about October 22, 2003, Magistrate Judge Garfinkel did call Light Sources' attorney to present the three new alternative proposals that First Light had submitted to the Court ex parte.

37. The new three alternative proposals which First Light submitted to the Court ex parte are:

(a) A payment of $150,000 "up front" upon execution of an agreement that includes an ADR clause

15