or

  (b) A payment of only $50,000 if the agreement does not contain an ADR clause

or

  (c) A payment of the $150,000 payable over ten (10) years if the Settlement Agreement does not contain an ADR clause.

  **D. THE SOLYMAR PATENT.**

  1. The Solymar U.S. Letters Patent No. 5,166,527 (the Solymar patent) is a patent which Light Sources acquired by assignment, and is attached as Exhibit 17.

  2. The Solymar patent (Exhibit 17) is not a patent in suit, and it is totally unrelated to the germicidal lamp disclosed and claimed in the '101 patent in suit.

  3. The Solymar patent (Exhibit 17) is directed to an ultraviolet lamp which is referred to as Light Sources' Slip End lamp.

  4. The Solymar patent was the subject of a prior patent infringement suit captioned *Light Sources, Inc. v.*

16

*First Light Technologies, Inc.*, 3:00 CV 1268 (RNC) filed in the U.S. District Court for the District of Connecticut, which was amicably settled by the parties thereto by a Settlement Agreement dated October 2000.

 5. Attached hereto is a copy of the Solymar patent Settlement Agreement executed by the parties thereto, wherein First Light agreed to discontinue the manufacture and sale of the lamps covered by the claims of the Solymar patent (Exhibit 17) in exchange for a release of liability resulting from any infringement of the Solymar patent and a withdrawal of the Court action. See attached Exhibit 18.

 **E. FIRST LIGHT'S MOTIVE FOR RAISING THE NEW ADR ISSUE AFTER SETTLEMENT WAS REACHED.**

 1. At the meeting of October 8, 2003, it was not disputed that the ADR provision first proposed in First Light's draft Settlement Agreement of September 26th was a new issue.

 2. It was also made quite apparent at the October 8, 2003 meeting that First Light's insistence on the ADR provision is because First Light desires to use the ADR provision as a venue to dispute and reopen the Settlement Agreement (Exhibit 18) which resolved the previous patent infringement suit involving the Solymar patent (Exhibit 17)

17

directed to Light Sources split-end patented lamp construction.

3.  To date, First Light and Light Sources have complied with all of the terms of the Settlement Agreement (Exhibit 18). Thus, there is no dispute, case or controversy that can be raised in a court of law.

4.  First Light has indicated that it now wishes to manufacture and sell a split end lamp of the type covered by the Solymar patent (Exhibit 17) and to which Light Sources indicated would constitute a breach of the Solymar Settlement Agreement (Exhibit 18) and a willful infringement of the Solymar patent (Exhibit 17).

5.  First Light's insistence in urging the belated ADR provision is to either establish a new venue to dispute the settlement agreement (Exhibit 18) that resolved the prior Solymar patent dispute and/or to scuttle the settlement reached in the present action.

**F.  FIRST LIGHT'S BELATED INSISTENCE ON AN ADR PROVISION IS NOT BEING MADE IN GOOD FAITH.**

1.  The Court can judicially note that in the original Report of the Parties Planning Meeting filed on or about March 28, 2002, First Light significantly did not wish a

referral to any alternative dispute resolution (ADR) procedure.

2. In the parties Revised Report of the Parties Planning Meeting filed on or about December 2002, First Light again did not request any referral for an alternative dispute resolution procedure.

3. It appears that First Light's raising its new belated ADR issue is not acting in good faith when the record indicates that First Light twice rejected the opportunity to request an alternative dispute resolution proceeding.

## A R G U M E N T

**A. RELEVANT APPLICABLE LAW**

A finding that a settlement offer was made and accepted is a factual one. <u>Enterprise Rent-A-Car Co. v. Rent-A-Wreck of America</u>,            ; 51 USPQ 2d 1213, 1214 (8 Cir 1999) citing <u>Vaughn v. Sexton</u>, 975 F.2d 498, 506 (8 Cir 1992).

If the district court's account of the evidence is plausible in light of the record viewed in its entirety, it may not be reversed on appeal; even though the appeal court would have weighed the evidence differently. <u>Enterprise</u>

19

Rent-A-Car, supra, citing Anderson v. Bessemer City, 470 US 564, 573-74 (1985).

Credibility determinations are within the exclusive domain of the district court, and are virtually unreviewable on appeal. Enterprise Rent-A-Car, supra, citing United States v. McCarthy, 97 F.3d 1562, 1579 (8th Cir).

It has long been recognized that the courts have broad, inherent authority and equitable power to enforce an agreement in settlement of litigation before it. Bostick Foundry v. Lindberg, 797 F.2d 280, 282-83 (6 Cir 1986). Moreover, a federal court possesses this power even if the agreement has not been reduced to writing. Brock v. Scheuner Corp., 841 F.2d 151, 154 (6 Cir 1998). See also Enterprise Rent-A-Car, supra, wherein an offer made by letter and orally accepted constituted an enforceable agreement.

A settlement agreement is a contract. Core-Vent Corp. v. Implant Innovations, Inc.,            ; 34 USPQ 2d 1581, 1584 (Fed Cir 1995); S and T Mfg. Co. v. County of Hillsborough,            ; 2 USPQ 2d 1280, 1281 (Fed Cir 1997).

It has been long established that courts favor dispute resolution through voluntary settlements and that

20

settlement contracts will be upheld wherever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits. S and T Mfg. Co., supra.

To create a binding contract, it must be the result of an offer, an acceptance of that offer and a meeting of the minds between the contracting parties. Notare Corp. v. Aquatic Renovation Systems, Inc., ; 46 USPQ 2d 1097, 1082 (SD Ind. 1997)

## B. THE PARTIES SETTLEMENT CORRESPONDENCE DID RESULT IN AN ENFORCEABLE SETTLEMENT AGREEMENT.

In response to Light Sources' Interrogatory No. 15, First Light stated what its gross sales of the accused lamps were for the period January 1, 1996 to December 31, 2002. See attached Exhibit 19 that First Light deemed confidential and subject to a Protective Order.[1] The admitted sales in Exhibit 19 do not include First Light's sales for the calendar years 1995, 1995 and 2003. Light Sources estimates that First Light's gross sales for 2003 will increase First Light's actual gross sales as indicated in Exhibit 19 by another $2,500,000 or more. It is contemplated that based on Light Sources' estimated sales

---

[1] The Protective Order permits disclosure of confidential information to the Court. As the settlement proceedings before the Magistrate Judge are considered to be confidential, Light Sources is not violating the protective order.

21

for the year 2003, First Light could easily add another $5,000,000 to its total gross sales over the life of the '101 patent in suit. Based on Light Sources' best estimate as indicated above, another $7,500,000 can be added to First Light's admitted sales as indicated in attached Exhibit 19.

The amount of First Light's sales of the accused device, coupled with First Light's increased potential liability if the infringement is found to be willful, and possible assessment of attorneys fees if infringement is deemed willful, is crucial to understanding the reasoning of the parties in reaching settlement so as to avoid the uncertainty of litigation and the substantial cost of litigation if settlement had not been reached.

It is not disputable that First Light desires a fully paid up license under the '101 patent in suit so that it could continue the manufacture and sale of the accused lamps for the duration of the life of the '101 patent without any disruption to its business. The only real and material issue in resolving the litigation was therefore the amount of monies First Light is willing to pay for a fully paid up license under the '101 patent in suit and the amount of money Light Sources is willing to accept for

22

granting a fully paid up non-exclusive license to First Light under the '101 patent in suit.

This core issue was finally resolved. On September 5, 2003, First Light presented the following alternative offer in a letter (Exhibit 10):

> "In short FLT (First Light) is willing to pay $200,000 over four years to settle all past and present claims surrounding the patent in suit (the '101 patent), as well as receiving a fully paid up license for the remaining term of both the '101 patent and the Solymar patent.[2] If LSI (Light Sources) is not willing to grant FLT a fully paid up license for the remaining enforceable term of the Solymar patent, then FLT will honor the previous oral agreed upon amount of $150,000 to settle the lawsuit."

There are two requisites to a valid offer, first it must be made with the intention of creating a legal relationship; and second, it must be definite and certain. It cannot be disputed that First Light's $150,000.00 offer satisfies these two requisites, and therefore constitutes a valid offer.

Significantly, there were no other stated conditions to First Light's $150,000 offer other than the implied understanding that the parties would effect a dismissal of the lawsuit.

---

[2] The Solymar patent is in reference to U.S. Patent 5,166,527 attached as Exhibit 17, which was the subject of a prior patent infringement suit which the parties amicably settled before an answer was due to be filed.

23

On September 12, 2003, Light Sources rejected the $200,000 offer that required a fully paid up license under the Solymar patent, but accepted in writing First Light's offer of $150,000 in exchange for a fully paid up license for the life of the '101 patent in suit (Exhibit 11).

Light Sources acceptance of First Light's $150,000 offer was absolute and unconditional and was made strictly in accordance with the terms of the offer.

Considering the record in its entirety and the applicable law, the parties have indeed entered into an enforceable settlement agreement. Reference is made to Enterprise Rent-A-Car Co., supra, wherein the Court found that Rent-A-Wreck's offer made in a letter dated April 20 to the effect that Rent-A-Wreck offered to discontinue the use of an accused phrase and use in lieu thereof a different non-infringing trademark, and which Enterprise orally accepted in a telephone call, resulted in an enforceable settlement agreement.

The offer and acceptance of the $150,000 for a fully paid up license for the life of the '101 patent is the core settlement that has been unambiguously agreed to by both First Light and Light Sources. As noted by the Court in Core-Vent Corp. v. Implant Innovations, Inc., supra:

> "So long as the core settlement is accepted, we have a settlement. I do not expect the parties to try to negotiate new terms in words that may not have been expected by you."

In Core-Vent, supra, the Court further noted that "Since contractual obligations are to be ascertained from objective manifestation of intent, [First Light] mental reservations are legally irrelevant." Citing David Massif Assoc. v. United States, 557 F.2d 249, 257 (Ct. Cl 1977).

On September 26, 2003, First Light submitted a draft agreement (Exhibit 12A) allegedly to memorialize the settlement agreement reached on September 12, 2003. However, in First Light's September 26th draft agreement, First Light introduced as paragraph 6 an Alternate Dispute Resolution (ADR) clause that had never been discussed by the parties, and therefore could not have been agreed to as being part of any settlement agreement. First Light also included in the September 26th draft a condition that First Light would pay the $150,000 over five (5) years[3] in quarterly installments, which was also never discussed or made part of the offer Light Sources accepted. As noted in Core-Vent, supra, a party's [First Light's] mental reservations with respect to an ADR provision and an

---

[3] It is to be noted that the term of the '101 patent expires at the latest on February 7, 2005, and that First Light's five (5) year extended payment plan would extend at least to 2008, some three (3) years beyond the life of the '101 patent.

25

unreasonable extended payment plan are legally irrelevant, since the contractual obligations are to be ascertained from objective manifestation of intent. First Light's belated ADR provision and the unreasonable payment plan proposed for the first time <u>after the fact</u> are legally irrelevant and cannot nullify or render the settlement reached on September 12, 2003, unenforceable.

Light Sources is in agreement with the substance of Paragraphs 1, 2, 3, 4, 5, 7, 8, 9 and 10 of First Light's September 26th draft (Exhibit 12A), as these paragraphs have been incorporated virtually verbatim in Light Sources' September 29th draft (Exhibit 13A) to memorialize the settlement reached. See Light Sources' September 29th draft (Exhibit 13A), wherein Paragraphs 1, 2, 3, 4, 5, 7, 8, 9 and 10 of First Light's September 26th draft correspond to Paragraphs 1, 4, 5, 6, 7, 8, 9, 10 and 11 respectively of Light Sources' September 29th draft (Exhibit 12A).

It is submitted that the payment plan is not a core issue when it is noted that even in the absence of any payment plan being expressed, the Court could construe the settlement reached as a matter of law to provide that the payment be made within a <u>reasonable time period</u>. Light Sources September 29th draft does provide First Light an

26

option to effect the payment of the $150,000 within a reasonable time period.[4]

However, this Court can take judicial notice that in reality, First Light does not need an extended payout plan when it is noted that in one of First Light's proposals in First Light's ex parte letter directed to the Magistrate Judge, First Light was agreeable to paying the entire amount of $150,000 up front if Light Sources would accept an ADR clause in the Settlement Agreement. From this new proposal, it can be concluded that First Light is financially able to effect the payment of $150,000 in full upon the execution or enforcement of the settlement agreement.

First Light's new proposal submitted ex parte to the Court on or about October 15, 2003, requiring the payment of the entire $150,000 amount "up front" will evidence that First Light's belated five (5) year payout plan on the grounds of hardship is not being made in good faith, and should not constitute a reason for not enforcing the settlement reached, as indicated herein.

First Light's bad faith becomes even more noticeable with respect to First Light's third alternative proposal

---

[4] At the October 8, 2003 meeting in the Magistrate Judge's Chambers, Mr. Myers, Light Sources Vice President, indicated that Light Sources was agreeable to extending the payment, viz. $50,000 upon the execution of the Settlement Agreement, $50,000 over the next year and $50,000 over the next succeeding year.

submitted ex parte to the Magistrate Judge wherein First Light proposed that the payout of the $150,000 be made over a ten (10) year period in the event Light Sources does not agree to an ADR provision.

Clearly, the three new and after the fact proposals submitted ex parte to the Magistrate Judge on October 15, 2003, cannot constitute any reason for not enforcing the settlement reached as of September 12, 2003, when Light Sources accepted First Light's offer of $150,000 made on September 5, 2003, in exchange for a fully paid up non-exclusive license under the '101 patent in suit.  See Core-Vent Corp., supra.

It is submitted that First Light's claims of hardship in effecting the payment of the $150,000 is bogus and not being made in good faith.  The bogus claim of hardship is merely an effort on the part of First Light to get, at Light Sources expense, a long term loan of $150,000, interest free.  Actually, the payment of $150,000, based on Light Sources' best estimate of First Light's gross sales of the accused lamp over the life of the '101 patent in suit, amounts to a deminimis royalty rate of only .00789 percent.

First Light's belated ADR issue is merely an attempt by First Light to establish a venue to dispute the

Settlement Agreement First Light entered into to resolve the prior Solymar patent dispute. As neither party is in breach of the Solymar Settlement Agreement, there is no dispute, case or controversy that can be raised in a Court of Law. Thus, it is apparent that First Light is seeking to incorporate a belated ADR provision in the settlement agreement in an effort to provide another venue to dispute or reopen the Solymar dispute. If establishing another venue to dispute the Solymar Settlement Agreement is not First Light's motive for insisting on an ADR provision, then First Light's other possible motive is to obstruct the settlement on the grounds that no settlement has been reached. In either event, First Light is not acting in good faith in seeking to include a belated ADR provision in the settlement reached.

If First Light is allowed to hamper a settlement by raising completely unrelated new issues after a settlement has been reached, then the whole mediation process is being frustrated and rendered meaningless.

C.  **FIRST LIGHT'S BELATED ADR ISSUE IS A BOGUS ISSUE.**

Judicial notice can be taken of the fact that in the parties' initial Report of the Parties Planning Meeting filed on or about March 28, 2002, First Light did not

29

request a referral for alternative dispute resolution proceeding.

In the Revised Report of the Parties Planning Meeting filed on or about December 13, 2002, First Light again did not request a referral for an alternative dispute resolution plan.

If First Light is really sincere in pursuing ADR, one may inquire why did First Light not request an ADR proceeding in the two Reports of the Parties Planning Meeting filed on March 28, 2002 and December 13, 2002. The only conclusion that can be made from First Light's insisting on a belated ADR provision is either to frustrate the settlement reached or to establish a venue to dispute the Solymar Settlement Agreement. In either event, First Light's insistence on a belated ADR provision is not being made in good faith.

D. **REQUEST FOR STAY OF DISCOVERY PENDING RESOLTUION OF ATTACHED MOTION TO ENFORCE THE SETTLEMENT AGREEMENT.**

Currently, the parties are proceeding with discovery pursuant to the outstanding Revised Discovery Plan approved by the Court on January 1, 2003. This stay is requested so as to avoid the unnecessary expenditure of time, money and energy of the respective parties in undertaking continued

discovery that will include the taking of depositions of several fact witnesses, preparing expert reports and the deposing of experts, and the filing of necessary motions relating to the unresolved discovery issues which will all be rendered moot if Light Sources' motion to enforce the Settlement Agreement reached is granted. It makes good practical sense to stay any further discovery pending the Court's resolution of Light Sources' Motion to Enforce the Settlement Agreement for all of the reasons stated herein. Further, neither party would be prejudiced by granting the stay, and the Court would be relieved of its burden of resolving any discovery dispute while Light Sources' Motion to Enforce the Settlement Agreement is pending. Reference is made to Rule 1 of Fed.R.Civ.P., which expresses that the rules that govern procedure in the Federal District Court shall be construed and administered to secure the just, speedy and inexpensive determination of every action.

## C O N C L U S I O N

In view of the facts, reasons and applicable authorities cited herein, Light Sources requests that the Motion To Enforce The Settlement Agreement be granted, and further, that the Court grant Light Sources' requested relief of staying any further discovery until such time

that Light Sources' Motion to Enforce the Settlement Agreement is determined.

                                          Respectfully submitted,

                                          _____
                                          Arthur T. Fattibene, CT06916
                                          Counsel for Plaintiff
                                          Fattibene and Fattibene
                                          2480 Post Road
                                          Southport, CT 06890
                                          Tel:  203-255-4400
                                          Fax:  203-259-0033

## Certificate of Service

I hereby certify that a copy of the foregoing

**PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO STAY DISCOVERY and MEMORANDUM IN SUPPORT THEREOF**

was mailed via U.S. Mail, first class, to Defendant's counsel of record as follows on the 28th day of October 2003.

Wm. Tucker Griffith
McCormick, Paulding & Huber LLP
CityPlace II, 185 Asylum Street
Hartford, CT 06103-4102

Attorney Kenneth F. Dusyn
330 Main Street, 3rd Floor
Hartford, CT 06106

_____
Arthur T. Fattibene, CT 06916
Counsel for Plaintiff
Fattibene and Fattibene
2480 Post Road
Southport, CT 06890